IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EATON CORPORATION,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Case No. _____ |

**COMPLAINT**

Plaintiff, Eaton Corporation ("Eaton"), brings this Complaint to initiate a proceeding to quash pursuant to 26 U.S.C. § 6038A(e)(4)(A) in response to summonses issued by the Internal Revenue Service ("IRS") to Eaton under 26 U.S.C. § 6038A to obtain the performance evaluations of certain individuals employed by Eaton's foreign related parties (hereinafter the "6038A Summonses").[1]

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), and all regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect for the years in issue.

1

## JURISDICTION AND VENUE

1. Jurisdiction is conferred on this Court by section 6038A(e)(4)(C), granting that "[t]he United States district court for the district in which the person (to whom the summons is issued) resides or is found shall have jurisdiction to hear any proceeding brought under subparagraph (A) or (B)."

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because Eaton maintains its principal place of business in Cleveland, Ohio.

## PARTIES

3. Plaintiff, Eaton, is a foreign parented corporation with its principal place of business at Eaton Center, 1000 Eaton Blvd., Cleveland, Ohio 44122.

4. Respondent is the United States of America.

## NATURE OF CURRENT DISPUTE AND SECTION 6038A

5. Eaton brings this Complaint to quash the summonses issued to Eaton under section 6038A by the Internal Revenue Service ("IRS") on August 27, 2023, to obtain the performance evaluations of certain individuals employed by certain of Eaton's foreign related parties, namely Eaton Intelligent Power, Eaton India Innovation Center LLP, Eaton Industries (Austria) G.m.b.H., and Eaton Elektrotechnika s.r.o, under 26 U.S.C. § 6038A (the "6038A Summonses"). The 6038A Summonses are attached hereto as Exhibit A.

6. The 6038A Summonses were issued in the course of the IRS's current examination of Eaton's 2017 through 2019 tax years.

7. Section 6038A(e)(4)(A) provides corporations who have received a section 6038A summons "the right to begin a proceeding to quash such summons not later than the 90th day after such summons was isued."

8. This action is closely related to *United States v. Eaton Corp.*, Case No. 1:23-mc-00037-JG, a summons enforcement action brought in this Court by the United States under section 7602 to compel production of employee performance evaluations for (i) certain domestic Eaton employees and (ii) the same foreign employees whose evaluations have been summonsed in this case. In that case, Eaton satisfied the summons with respect to the domestic performance evaluations via a negotiated settlement with the government. The foreign evaluations remain at issue in that case.

9. Section 6038A requires certain foreign-owned domestic corporations to maintain and provide the IRS specified information on transactions with related parties.

10. Summonses under section 6038A are generally subject to the same procedures and legal standards as administrative summonses under section 7602. *See Nissei Sangyo Am., Ltd. v. United States*, 76 A.F.T.R.2d 95-5736 (N.D. Ill. 1995). Section 6038A does not expand the types of information to which the IRS is entitled, but rather provides specific procedural rules, penalties, and other remedies relating to the maintenance and provision of information to the IRS when a domestic corporation is foreign-owned. Thus, the same legal limitations apply to the information that can be obtained through a section 6038A summons (at issue in this case) and an ordinary section 7602 summons (at issue in *United States v. Eaton Corp.*, Case No. 1:23-mc-00037-JG).

11. Indeed, the regulations under section 6038A provide a "safe harbor" delineating the types of information that must be maintained and provided under section 6038A. Under this safe harbor, the scope of information required to be maintained and provided to the IRS under section 6038A is *narrower* than the scope of information required to be provided to the IRS under the general summons authority of section 7602.

12. For the reasons stated below, Eaton requests that the summonses issued by the IRS under section 6038A on August 27, 2023, be quashed.

## FACTUAL BACKGROUND

13. Eaton is a domestic corporation, wholly owned by Eaton Corp. plc based in Dublin, Ireland.

14. The IRS is currently engaged in an examination of Eaton's income tax returns for 2017, 2018 and 2019. Affidavit of Marvin Bai, Vice President of Tax, Eaton Corporation (hereinafter "Bai Affidavit"), at 1-2. In the course of this examination, Eaton has responded to over 400 IRS "Information Document Requests" ("IDRs") with over 13 GB of data, including over 44,000 pages of PDF documents (not including other types of documents such as Excel files). *Id.* Eaton has also provided in-person tours of six facilities in four different cities and allowed the IRS forty interviews (transcribed and under oath) with Eaton employees and service providers. *Id.* at 2.

15. On October 20, 2022, the IRS presented a draft IDR to Eaton that requested annual performance evaluations for certain domestic and foreign employees for 2017 through 2019. *Id.* In response, on October 27, 2022, Eaton personnel met with the IRS exam team to discuss the IDR request and explained that Eaton would not produce the requested evaluations

because they are personnel records implicating privacy concerns under applicable caselaw, are irrelevant to the IRS's examination of Eaton's income tax returns, are unnecessary to the IRS's examination due to the availability of alternative sources of information, and, with respect to the foreign evaluations, cannot be produced without violating foreign law. *Id.* at 3.

16. Eaton has offered several alternative means for the IRS to obtain any potentially relevant information that the IRS expected to extract from the performance evaluations. First, Eaton offered to answer in writing any questions the IRS has regarding the foreign employees' job functions, projects, and responsibilities. *Id.* Second, Eaton offered to make its foreign employees and/or their supervisors available to the IRS for transcribed virtual interviews. *Id.*

17. Eaton expected that the IRS would obtain the information it sought from the performance evaluations through interviews. For example, on April 10, 2023, the IRS interviewed the manager and direct supervisor of many of the foreign employees in question. *Id.* Belying any notion that virtual interviews are somehow ineffective, the IRS declined Eaton's offer of an in-person interview, instead conducting the interview virtually. *Id.* Moreover, the IRS did not take the opportunity to ask any questions about the foreign employees at issue or their roles or projects, with the exception of a few questions relating to one intellectual property attorney. *Id.* The interviewee substantively and fully answered each such question. *Id.*

18. In addition, the IRS requested an interview with a second individual who was the direct supervisor for most of the remaining Irish employees in question. *Id.* This individual's performance evaluation has also been summonsed and is at issue. *Id.* Rather than following through with this interview, however, the IRS withdrew the request and has since declined Eaton's repeated offers of a virtual interview. *Id.*

19. Eaton has at all times remained willing to provide written explanations of any requested details regarding its foreign employees' job functions or projects.

20. Eaton has also remained willing to make its foreign employees and/or their supervisors available for virtual interviews with the IRS in lieu of providing the performance evaluations. *Id.* at 3-4. Some of the foreign employees at issue are no longer employed by Eaton, but in all cases either the employee, the employee's direct supervisor, or both remain at Eaton available for a virtual interview. *Id.* The IRS has declined Eaton's offers of these interviews. *Id.* at 4.

21. On February 15, 2023, the IRS issued summonses under section 7602 for the employee evaluations (the "7602 Summonses"). The 7602 Summonses included a request for the same evaluations that are at issue here with respect to foreign employees.

22. On June 9, 2023, the United States initiated a proceeding in this Court to enforce the 7602 Summonses.

23. On August 27, 2023, the IRS issued duplicative summonses to Eaton for twenty-five performance evaluations relating to foreign Eaton employees under the authority granted to the IRS under section 6038A. These summonses were otherwise identical to a traditional section 7602 summons except that they included a handwritten "6038A Summons" on the signature page of each summons.

24. On November 6, 2023, the parties met under the Court's supervision and resolved the issues pertaining to the requested domestic performance evaluations included in the 7602 Summonses. After the settlement conference, the Court ordered the parties to brief the issues

6

related to the summonsed foreign employee performance evaluations. Eaton filed its brief on November 15, 2023.

## ARGUMENT

25. Eaton should not be required to produce the summonsed employee performance evaluations for the following reasons:

(a) The IRS has not met the heighted relevance standard articulated by this Court to compel the disclosure of personnel records, which include employee performance evaluations;

(b) The IRS has not demonstrated that any relevant information in the performance evaluations cannot be obtained by alternative means, including through interviews with the relevant employees and their supervisors, which Eaton has offered and the IRS has declined;

(c) Even if the IRS could meet the heightened legal standard to obtain the summonsed records, the summons process under section 6038A is inapplicable because personnel records are not among the types of information described in section 6038A(b); and

(d) Disclosure of the summonsed personnel records would violate foreign privacy law and expose Eaton and related parties to significant administrative fines and penalties.

26. Because the 6038A Summonses are duplicative of the 7602 Summonses, and because, as explained above in paragraph 10, the 6038A Summonses are governed by the same legal authority as the 7602 Summonses (and indeed are further restricted by regulation), several

of Eaton's arguments largely replicate the arguments raised in Eaton's November 15, 2023, filing with the Court at issue in *United States v. Eaton Corp.*, Case No. 1:23-mc-00037-JG, Respondent's Brief, ECF No. 12.

**A. The IRS has not met the heighted relevance standard articulated by this Court to compel the disclosure of personnel records, which include employee performance evaluations**

27. Summonses issued under section 6038A are governed by the same legal standards as those issued under 26 U.S.C. § 7602. *Nissei Sangyo America, Ltd. v. United States*, 76 A.F.T.R.2d 95-5736 (N.D. Ill. 1995). Section 6038A does not entitle the IRS to a broader category of records than it could otherwise obtain. *See* Preamble to Final Regulations under 6038A, T.D. 8353, 56 Fed. Reg. 28,056 (June 19, 1991) (confirming "equivalence" of general record keeping requirements under section 6001 and those under 6038A). Ultimately, if the IRS cannot obtain employee performance evaluations through its traditional summons process, it should not be allowed to obtain them through the summons process under section 6038A either. Indeed, as discussed further below, section 6038A includes a narrower "safe harbor" list of particular documents that, if maintained and provided upon request, constitute compliance with section 6038A.

28. To enforce a summons, the IRS must demonstrate that its investigation has a legitimate purpose and the information summonsed is relevant to that purpose. *United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 733 (6th Cir. 2006) (citing *United States v. Powell*, 379 U.S. 48 (1964)). In this case, the IRS seeks personnel records (employee performance evaluations) that implicate privacy concerns, so it must make a "compelling showing of relevance," *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 384 (W.D. Tenn. 1999), and

demonstrate that the information sought is not available by alternative means, *see United States v. Eaton Corp.* ("*Eaton I*"), Nos. 12 MC 24-27, 2012 U.S. Dist. LEXIS 115003, at *4 (N.D. Ohio Aug. 15, 2012).

29. Many courts have applied this heightened standard for the production of personnel records. *See, e.g.*, *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990) (holding that where relevant information contained in personnel files can be developed by alternative means, the files should not be produced); *Grays v. Mayorkas*, No. 21-10526, 2022 U.S. Dist. LEXIS 22909, at *16 (E.D. Mich Feb. 8, 2022) ("In balancing an employee's privacy interest and the discoverability of a personnel file, courts generally require a party to show a 'heightened' or 'compelling' showing of relevance." (quoting *Miller*, 186 F.R.D. at 384-85)); *United States EEOC v. McCormick & Schmick's Seafood Rests.*, No. 11-2695, 2012 U.S. Dist. LEXIS 115673, at *10-11 (D. Md. Aug. 16, 2012) ("personnel files are discoverable when (1) [the] material is clearly relevant; and (2) the need for disclosure is compelling because the information sought is not otherwise readily available" (alteration in original) (citations omitted)); *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (noting strong public policy against discovery of personnel files and holding that production is required only if the material sought is clearly relevant and not otherwise readily obtainable); *cf. Prof'l Recovery Servs. v. GE Cap. Corp.*, No. 06-2829, 2009 U.S. Dist. LEXIS 3889, at *11 (D.N.J. Jan. 15, 2009) ("[I]t has been recognized that personnel files, even of a party's agent, may contain information that is both private and irrelevant to the case, and that special care must be taken before personnel files are turned over to an adverse party").

30. This Court has already denied a summons issued by the IRS to Eaton under circumstances strikingly similar to this case. In *Eaton I*, the IRS claimed the performance evaluations of a former Eaton employee were relevant to a transfer pricing investigation because the employee's evaluations "likely" contained information on Eaton's transfer pricing methodology. *See Eaton I*, at *40. The Court declined to enforce the IRS's summons enforcement petition because the IRS's need for the performance evaluations was "purely speculative" and the IRS had not "persuasively demonstrated the relevance of [the] performance evaluations" to the transfer pricing issue under examination. *Id.* at *42-43. Importantly, the Court found "persuasive" Eaton's argument that summons enforcement was unnecessary because the IRS had already interviewed the employee in question. *Id.* at *43.

31. Here the IRS has failed to explain how the requested performance evaluations are relevant to its investigation, which involves the pricing of the intellectual property transferred between Eaton and a related party—let alone compellingly so. Eaton has repeatedly asked the IRS to explain why the performance evaluations are relevant to its investigation of the proper pricing of Eaton's intellectual property, which is an economic question that does not depend on any employee's job performance. A performance evaluation, by its nature, contains irrelevant qualitative judgments and offers only a glimpse into a single employee's work; the less-intrusive alternatives offered (e.g., interviews and/or written explanations of job duties and projects) could supply any relevant information concerning the functions performed by Eaton's employees in a way that is better tailored to the IRS's true needs. Because the IRS has refused meaningful opportunities to obtain any relevant information via interviews or written explanations, any claim that Eaton's performance evaluations are compellingly relevant rings hollow.

**B. The IRS has not demonstrated that any relevant information in the performance evaluations cannot be obtained by alternative means, including through interviews with the relevant employees and their supervisors, which Eaton has offered and the IRS has declined.**

**32.** As explained above, Eaton has offered alternative means for the IRS to obtain any relevant information, including making the foreign employees whose evaluations have been summonsed and/or their supervisors available to the IRS for virtual interviews—but the IRS has declined. In *Eaton I*, the Court found the IRS's summons enforcement action unnecessary where the IRS had already interviewed the employee in question. *Eaton I*, at *43. Here, the IRS has not even attempted to interview the employees at issue, so the IRS's summonses should be quashed.

33. Strikingly, as applied to the 6038A Summons there are three separate legs of legal authority all requiring the IRS to accept alternative means to acquire any underlying information it seeks. First, as already discussed, the caselaw regarding discovery of performance evaluations stresses the requirement that the government show a need that cannot be met by alternative means. Second, as discussed below in paragraph 38, the regulations under section 6038A allow taxpayers to provide "functional equivalents" of any required documentation. Third, as discussed below in paragraphs 42 and 43, one of the five factors relevant to whether production should be ordered in violation of foreign law is the "availability of alternative means of securing the information." Eaton has repeatedly offered alternative means, but the IRS has not even tried to ask questions or conduct interviews to obtain the information it desires.

**C. Even if the IRS could meet the heightened legal standard to obtain the summonsed records, the summons process under section 6038A is inapplicable because personnel records are not among the types of information described in section 6038A(b)**

34. Even if the IRS could meet the heightened legal standards of relevance and need to justify a summons for personnel records, section 6038A should not apply in this case because performance evaluations are not within the type of information described in section 6038A(b) and therefore cannot be summonsed under section 6038A.

35. The Treasury Department ("Treasury") has promulgated regulations to clarify the types of records that taxpayers and their agents are required to maintain for the purposes of section 6038A, including a list of specific documents constituting a "safe harbor" for taxpayers. The most relevant category of documents described in this safe harbor are "pricing documents":

> Pricing documents. This category includes all documents relevant to establishing the appropriate price or rate for transactions between the reporting corporation and any foreign related party. Examples include, but are not limited to, documents related to transactions involving the same or similar products or services entered into by the reporting corporation or a foreign related party with related and unrelated parties; shipping and export documents; commission agreements; documents relating to production or assembly facilities; third-party and intercompany purchase invoices; *manuals, specifications, and similar documents relating to or describing the performance of functions conducted at particular locations*; intercompany correspondence discussing any instructions or assistance relating to such transactions provided to the reporting corporations by the related foreign person (or vice versa); intercompany and intracompany correspondence concerning the price or the negotiation of the price used in such transactions; documents related to the value and ownership of intangibles used or developed by the reporting corporation or the foreign related party; documents related to cost of goods sold and other expenses; and documents related to direct and indirect selling, and general and administrative expenses (for example, relating to advertising, sales promotions, or warranties).

Treas. Reg. § 1.6038A-3(c)(2)(iii) (emphasis added). While the list of pricing documents is not exhaustive, it is extensive. Among the variety of "pricing documents" listed, the closest items to

12

employee performance evaluations are "manuals, specifications, and similar documents relating to or describing the performance of functions conducted at particular locations." But performance evaluations are in no way "similar" to "manuals" or "specifications." These types of documents are all likely widely distributed documents within the organization rather than private personnel records. They also go directly to the type of work conducted at a particular facility rather than the specific performance of an individual employee.

36. Based on the description of "pricing documents" included in the relevant regulations, employee performance evaluations are not the type of information required to be maintained under section 6038A and therefore should not fall within the class of information that is subject to the IRS's summons authority under section 6038A.

37. If performance evaluations for specific employees are required to be maintained under this regulation, then the supposed "safe harbor" will be swallowed by the breadth of the rule. Every document ever created by a company, including, for example, all emails, relates in some way to the "performance of functions conducted at particular locations."

38. Moreover, even if performance evaluations were records that taxpayers are required to maintain under the section 6038A regulatory safe harbor (which they are not), the regulations expressly state that "[f]unctional equivalents of the specified documents are acceptable." Treas. Reg. 1.6038A-3(c)(1). Eaton has offered functional equivalents of any "pricing" information that could possibly be contained within the performance evaluations (i.e., written details of employee functions or transcribed employee interviews), and so has complied with the safe harbor in any event.

**D. Disclosure of the summonsed personnel records would violate foreign privacy law and expose Eaton and related parties to significant administrative fines and penalties.**

39. Compliance with the IRS's summons would require Eaton to violate foreign data privacy law and subject itself to significant liability, despite less-intrusive alternative avenues for the IRS to obtain the requested information. Compliance with the summons would require Eaton to violate the European Union's General Data Protection Regulation ("GDPR") and expose itself to private lawsuits or regulatory actions that could result in significant fines and administrative penalties. This result is entirely avoidable because the IRS can obtain any relevant information through other means.

40. The General Data Protection Regulation ("GDPR") applies to the evaluations. The GDPR took effect in May 2018 and applies to the processing of personal data in the context of the activities of an establishment in the European Union ("EU"), regardless of whether the processing takes place within the EU or not. Therefore, the GDPR applies to Eaton in respect of the processing of personal data of Eaton employees based in the EU.[2] Employers like Eaton are generally considered "data controllers" under the GDPR when they collect and store employees' "personal data," which includes employee performance evaluations.[3]

---

[2] Recital 22 of the GDPR clarifies that an "[e]stablishment implies the effective and real exercise of activities through stable arrangements. The legal form of such arrangements, whether through a branch or a subsidiary with a legal personality, is not the determining factor in that respect."

[3] *See, e.g.*, Irish Data Protection Commission, *Guidance Note: Data Protection in the Workplace: Employer Guidance*, at 3 (Apr. 2023) ("[P]ersonal data can range from basic information such as names, addresses and PPSNs, but can also include information on occupational health, sick leave, performance reviews or disciplinary actions.").

41. Here, Eaton is a "data controller" with respect to its employees' performance evaluations, and 23 of the 25 summonsed foreign evaluations relate to employees who are EU residents.[4] Accordingly, if Eaton were ordered to produce the summonsed performance evaluations, the action could violate numerous provisions of the GDPR, including Article 5 (principles for processing personal data), Article 6 (lawfulness of processing), Articles 12 through 14 (setting out the rights of "data subjects" in relation to transparency), and Articles 44 through 49 (relating to transfers of personal data to third countries or international organizations). In essence, producing the summonsed performance evaluations would amount to an unauthorized disclosure of personal data by Eaton which would constitute a serious breach of Eaton's core obligations under the GDPR. These violations could trigger a fine of up to €20 million or up to 4% of Eaton's worldwide annual revenue from the preceding financial year, whichever is greater. *See* GDPR, Art. 83(5). Taking Eaton's $20.8 billion in reported revenues last year,[5] the infractions above could result in a fine of up to $832 million under the GDPR.

42. While the Court could theoretically order Eaton to produce the summonsed evaluations in violation of the GDPR, there is no support for doing so under these circumstances. The Supreme Court uses a five factor comity analysis to decide whether to compel document discovery despite foreign law. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522 (1987). The factors are:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information

---

[4] The remaining two evaluations are for Indian employees. India recently passed its own expansive data protection law, similar to the GDPR, although it has yet to go into effect.

[5] Eaton Corporation plc, Annual Report at 2 (Form 10-K) (Feb. 23, 2023) (for year ended December 31, 2022).

15

> originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* at 544 n.28 (alteration in original) (citation omitted); *see also Swapalease, Inc. v. Sublease Exch.*, No. 1:07-CV-45, 2008 U.S. Dist. LEXIS 137565 (S.D. Ohio Sept. 19, 2008) (applying same).

43. Here, all five factors support a denial of the IRS's petition in recognition of foreign data privacy law:

(1) <u>Importance</u>: As discussed above, the IRS has not made an adequate, much less "compelling," showing of relevance, so it is unclear how or why the evaluations are important to the IRS's investigation or any other related proceeding. This factor weighs against disclosure.

(2) <u>Specificity</u>: The IRS's summons requests 25 evaluations for foreign employees in full, without specifying the relevant substantive information (if any) that is to be produced from each evaluation. This factor weighs against disclosure.

(3) <u>Origin</u>: The summonsed performance evaluations at issue originated outside of the United States. This factor weighs against disclosure.

(4) <u>Availability of Alternative Means</u>: As discussed above, alternative means of securing the information have been made available, including virtual transcribed interviews with the foreign employees in question or their supervisors. This factor weighs against disclosure.

(5) <u>Extent to Which Noncompliance Would Undermine U.S. Interests</u>: The United States has an interest in tax compliance and enforcement, but the IRS has not demonstrated the relevance of the employee evaluations to its transfer pricing investigation. It is unclear

how noncompliance would undermine the United States' interests in this case. This factor weighs against disclosure.

44. For the reasons stated above the Court should quash the summonses issued on August 27, 2023, by Respondent United States under section 6038A.

## PRAYER FOR RELIEF

45. Wherefore, Eaton respectfully requests that the Court enter an order quashing the summonses issued on August 27, 2023, by Respondent United States under section 6038A.

Respectfully submitted this 22nd day of November, 2023.

|  |  |
|---|---|
| Nadiya F. Beckwith-Stanley* <br> Garrett L. Brodeur* <br> Skadden, Arps, Slate, Meagher <br>  & Flom LLP <br> 1440 New York Avenue, NW <br> Washington, DC 20005 <br> Telephone: (202) 371-7000 <br> Fax: (202) 393-5760 <br> nadiya.beckwith-stanley@skadden.com <br> garrett.brodeur@skadden.com <br><br> *Motion for Pro Hac Vice Admission Pending | *s/ Juliana D. Hunter* <br> Juliana D. Hunter* <br> Skadden, Arps, Slate, Meagher <br>  & Flom LLP <br> 1000 Louisiana Street, Suite 6800 <br> Houston, TX 77002-5026 <br> Telephone: (713) 655-5119 <br> Fax: (713) 483-9119 <br> juliana.hunter@skadden.com <br><br> *Attorneys for Petitioner, Eaton Corporation* |